# EXHIBIT "A"



# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WANDA M. FLEMING                          :
11215 Oak Leaf Drive, Apt. 1704,          :
Silver Spring, Maryland, 20901            :

       v.                                      :    No. 02-CV-2703
                                          :
KRAMONT EMPLOYER ROYCE                    :
REALTY, INC. d/b/a KRAMONT REALTY         :
TRUST                                     :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :
MONTGOMERY CV REALTY GROUP                :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :
CV REIT, INC.                             :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :
MONTGOMERY CV REALTY TRUST                :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :
MONTGOMERY CV REALTY, L.P.                :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :
KRAMONT OPERATING                         :
PARTNERSHIP, L.P.                         :
580 West Germantown Pike, Suite 200       :
Plymouth Meeting, PA 19462                :
                                          :
      and                                     :
                                          :

KRAMONT REALTY TRUST, INC.          :
580 West Germantown Pike, Suite 200 :
Plymouth Meeting, PA 19462          :
                                     :
         and                         :
                                     :
DREXEL REALTY, INC., d/b/a          :
MONTGOMERY CV REALTY GROUP          :
580 West Germantown Pike, Suite 200 :
Plymouth Meeting, PA 19462          :
                                     :
         and                         :
                                     :
JOHN R. AHLE, JR., Individually,    :
C/o 580 West Germantown Pike, Suite 200 :
Plymouth Meeting, PA 19462          :
                                     :
         and                         :
                                     :
EDWARD KOCHMAN, Individually,       :
C/o 580 West Germantown Pike, Suite 200 :
Plymouth Meeting, PA 19462          :

## COMPLAINT

Plaintiff, Wanda Fleming, by her undersigned counsel, brings this Complaint seeking legal and equitable relief for employment discrimination based upon race and gender/sex and retaliation for engaging in protected acts, and related causes of action against the Defendants and claims of the Defendants a sum in excess of $100,000.00 in damages upon a cause of action and in support thereof avers as follows:

### I.    PARTIES AND INTRODUCTIONS

1.    Plaintiff, Wanda Fleming, is an adult female African-American who currently resides at 11215 Oak Leaf Drive, Apt. 1704, Silver Spring, Maryland, 20901.

2.      Defendant Royce Realty, Inc., ("Royce") d/b/a Kramont Realty Trust and Montgomery CV Realty Group, is a Pennsylvania corporation with a place of business at 580 West Germantown Pike, Suite 200, Plymouth Meeting, Pennsylvania, 19462.

3.      Defendant CV REIT, Inc. is a Delaware corporation with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462.

4.      Defendant Montgomery CV Realty Trust ("MCVRT") is a Delaware business trust registered in Pennsylvania as a foreign business with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462.

5.      Defendant Montgomery CV Realty, L.P. is a Delaware limited partnership registered in Pennsylvania as a foreign business with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462.

6.      Defendant Kramont Operating Partnership, L.P. is a Delaware limited partnership registered in Pennsylvania as a foreign business with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462.

7.      Defendant Kramont Realty Trust, Inc., is a Maryland corporation registered in Pennsylvania as a foreign business with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462.

8.      Drexel Realty, Inc., d/b/a Montgomery CV Realty Group, is a Pennsylvania corporation with a place of business at 580 W. Germantown Pike, Suite 200 Plymouth Meeting, Pennsylvania, 19462. The Defendants set forth in paragraphs 2 through 8 shall hereinafter be collectively referred to as the "Corporate Defendants."

9.      Non-Party Kranzco Realty Trust, ("Kranzco") is a Maryland business trust with a place of business located at 128 Fayette St., Conshohocken, PA 19428.

10.     It is believed and therefore averred that in or about June, 2000, a merger was completed between CV REIT, Inc. and Kranzco, hereinafter referred to as the "merger". The surviving company was renamed as Kramont Realty Trust, Inc. Kramont Realty Trust a self-administered, self-managed Real Estate Investment Trust, that includes an umbrella partnership real estate investment trust.

11.     Defendant John R. Ahle, Jr., an adult individual, was employed by Krazco Realty Group at all relevant times hereto up until the merger. Upon or subsequent to the merger, and at all relevant times thereafter, Defendant Ahle was employed by Kramont Realty Trust or one of the other Corporate Defendants. His current position is Director/Vice President of Operations.

12.     Defendant Edward Kochman, an adult individual, was employed by Montgomery CV Realty Trust, Montgomery CV Realty, L.P. or Royce Realty, Inc. at all relevant times hereto up until the merger. Upon or subsequent to the merger, and at all relevant times thereafter, Defendant Kochman was employed by Kramont Realty Trust or one of the other Corporate Defendants. His current position is Senior Vice President of Administration.

13.     This is an action for declaratory, injunctive, monetary and other appropriate relief sought by Plaintiff, Wanda Fleming, to redress violations by the Defendants of rights secured to her by laws of the United States of America and the Commonwealth of Pennsylvania.

14.     This action arises under Title VII of the Civil Rights Act of 1964 and 1991, (hereinafter referred to as "Title VII") as amended. Title 42 U.S.C. §2000 et seq. and the Pennsylvania Human Relations Act 43 P.S. §951 et seq., (hereinafter referred to as the "PHRA"), and is brought by the plaintiff to redress, arbitrary, improper, unlawful, willful, deliberate and intentional discrimination with respect to the compensation, time, conditions and privileges of employment based upon sex and race.

15.     At all times relevant hereto the Corporate Defendants were employers and persons as defined under Title VII and PHRA and are subject to the provisions of said acts.

16.     At all times relevant hereto the Corporate Defendants were engaged in Interstate Commerce.

17.     At all times relevant hereto, the Corporate Defendants were employers of the Plaintiff at the time of the violation of her civil rights under federal and Pennsylvania law to be free from, unlawful discrimination based on unlawful sex discrimination, race discrimination and sexual harassment in employment.

## II.     JURISDICTION AND VENUE

18.     The jurisdiction of the Court is invoked pursuant to Title 28 U.S.C. §1331, which provides for original jurisdiction for plaintiff's claim arising under the laws of the United States of America and over actions to recover damages and to secure equitable and other relief under the appropriate governing statutes.  The jurisdiction is alternatively based upon diversity of the parties pursuant to 28 U.S.C. §1332.

19.     The venue of this Court is invoked pursuant to the dictates of Title 28 U.S.C. §1391(c).

20.     This Court is requested to assume supplemental jurisdiction pursuant to 28 U.S.C. §1367 to consider plaintiff's claims arising under the Pennsylvania Human Relations Act, 43 P.S. §951 et seq. and related state claims.

21.     All conditions precedent to the institution of this suit have been fulfilled.  On February 4, 2002 a Notice of Right to Sue was issued by the Equal Employment Opportunity Commission.  This action has been filed within ninety (90) days of receipt of such notice.

22.     The employment practices alleged to be unlawful were committed by the Defendants in and around Montgomery County, Pennsylvania, where Plaintiff worked for certain Corporate Defendants.  Therefore, the United States District Court for the Eastern District of Pennsylvania is the proper venue for the action under 28 U.S.C. §1391(b).

### III.     STATEMENT OF CLAIM

23.     Plaintiff was originally employed by MCVRT, or a similar Corporate Defendant, in April, 1998 until the merger.  Upon or subsequent to the merger, Plaintiff was employed by one of the other Corporate Defendants, which was a surviving entity of the merger.  The Corporate Defendants held out to Plaintiff that the entity that employed her was "Kramont Realty Trust," and such entity that employed her will be hereinafter referred to as the "Kramont Employer."  Plaintiff remained in this employ until January 30, 2000, when the Kramont Employer discharged her.

24.     Plaintiff's position at the outset of her employment with MCVRT was receptionist.

25.     During her period in this position, Plaintiff met or exceeded her employment responsibilities.

26.     In or about May 2000, Plaintiff was promoted to the position of Administrative Assistant in the Operations Department.  She remained in this position upon the merger throughout her employment with the Kramont Employer until her aforementioned discharge.

27.     During her period in this position, Plaintiff met or exceeded her employment responsibilities.

28.    MCVRT (before the merger) and the Kramont Employer (after the merger)

represented to Plaintiff that her promotion was linked to the merger, and that pursuant to same,

Plaintiff's responsibilities would be expanded.  MCVRT further represented that the promotion

would be met with a commensurate increase in salary, benefits and or emoluments of

employment.   MCVRT represented that it would promptly inform Plaintiff of the amount of her

salary increase.  The Kramont Employer repeated, incorporated by reference and ratified such

representations by statements made to Plaintiff.

29.    Plaintiff began her new position in May, 2000 and sufficiently or excessively

performed her newly expanded duties pursuant to such position until her discharge.

30.    Pursuant to her new position Plaintiff reported to various individuals depending

upon the job task assigned.  Initially those management officials included Ed Kochman, Sr., Vice

President of Administration, Jeffrey Hipple, Vice President of Acquisitions, both of who are

white males.

31.    Plaintiff was also appointed and/or charged with the duties of corporate liason to

Kranzco for the merger.  She sufficiently or excessively performed such duties.

32.    Upon the merger, Kramont Employer, Defendant Ahle became Vice

President/Director of Operations of the Kramont Employer.  Upon his placement, Defendant

Ahle was charged with direct supervisory duty over Plaintiff.  Defendant Ahle is also a white

male.

33.    Immediately upon taking direct supervisory control over plaintiff Mr. Ahle

embarked upon a settled plan the ultimate goal of which was to cause the termination of Plaintiff,

either by formal discharge or constructively, by creating such a hostile work environment that

Plaintiff would have no reasonable alternative but to quit.  His plan included the harassment of

Plaintiff, the deprivation of Plaintiff of necessary information to perform her job, the exclusion

of Plaintiff from essential meetings and other ostracism, the unwarranted and untoward chastisement and criticism of Plaintiff publicly for failing to integrate and act upon the information which she had been improperly deprived.

34.    Referring to Plaintiff, Kramont Employer Ahle warned one or more co-employees not to "get too friendly with that stupid nigger," and that he was planning "to replace her with his former Secretary, Christine," who Defendant Ahle described as "sexy." Plaintiff believes and therefore avers that the "Christine" referred to by Defendant Ahle in this statement was Christine Kempf.

35.    Prior to the merger, Ms Kempf had been an employed under Defendant Ahle's direct supervision at his previous place of employment. Subsequent to the merger and at Defendant Ahle's suggestion, Ms. Kempf was placed as an employee of the Kramont Employer, in the position of administrative assistant in the Operations Department. There she was, along with Plaintiff, under the direct supervision of Defendant Ahle. Ms Kempf is also a white female.

36.    Upon her placement with the Kramont Employer, Plaintiff and Ms. Kempf worked in close proximity under Defendant Ahle's supervision.

36    In furtherance of his aforementioned plan, Defendant Ahle treated Ms. Kempf differently from Plaintiff through conduct that included, without limitation, the following:

    a).  Kramont Employer Ahle would conduct, as a practice, extensive closed-door meetings with Kempf, from which Plaintiff was excluded. Plaintiff was never included in any closed-door meetings, either with or without Ms. Kempf;

    b).  Kramont Employer Ahle would permit Ms. Kempf to decide which tasks that she wanted to perform and which she wanted. Mr. Ahle would "dump" the responsibilities that Ms. Kempf would reject onto Plaintiff;

c). Kramont Employer Ahle did not require Ms. Kempf to log in her reporting time, while he did require that of Plaintiff; and

d). Kramont Employer Ahle would conduct extensive personal conversations with Ms. Kempf standing in front of Ms. Kempf's work station, while completely excluding and ignoring Plaintiff's presence, just a few feet away. Not only would Kramont Employer Kempf fail to include her in dialogue, whether personal or work related, but he would refuse to even address her. In weekly staff meetings he would turn address all other people while turning his back to Plaintiff. All other personnel in these staff meetings were also white.

37.    Defendant Ahle did not subject Ms. Kempf or any other white employee to the same adverse treatment, as described above in Paragraph 36, to which he subjected Plaintiff

38.    Another example of Defendant Ahle's discriminatory treatment of Plaintiff was his handling of her overtime. Defendant Ahle assigned tasks to Plaintiff that could not be completed during normal working hours. Accordingly, she would put in extra hours to complete the work, either by staying late, bringing work home or working on weekends. Plaintiff would not seek to be reimbursed for the extra time spent. Defendant Ahle then criticized Plaintiff for working overtime without recording and submitting same. He instructed her to record all overtime on timesheets and present it to him. Thereafter Plaintiff followed Kramont Employer Ahle's instruction. Kramont Employer Ahle then criticized Plaintiff for working too much overtime. Kramont Employer Ahle further refused to authorize overtime and remarked that Plaintiff should complete her work within regular business hours. These "Catch-22" rules were not equally applied to Ms. Kempf or any other white employee.

39.    Plaintiff was also, at Kramont Employer Ahle's instruction, excluded from a very important meeting for the Operations Department. Plaintiff was the only person from the

Department to be left behind.  All other employees of that department were white.  Kramont

Employer Ahle did not provide Plaintiff with a report of the substance of the meeting, and

accordingly, did not apprise her that several changes were made to transactional documents that

Plaintiff used in her work regularly.  Plaintiff gave advice to other Kramont employees, based

upon her understanding of the documents.  The changes made at the meeting mooted Plaintiff's

advice.  Defendant Ahle unnecessarily and harshly criticized Plaintiff for the mistake for which

she was not responsible in an e-mail to the client.  Defendant Ahle did not subject Ms. Kempf or

any other white employee to the same treatment.

    40.    Such discriminatory treatment was in furtherance of Mr. Ahle's aforementioned

decided plan to cause the termination of Plaintiff.

    41.    Meanwhile, the Kramont Employer had not informed Plaintiff of the amount of

her salary increase.  She raised this issue with Kramont Employer several times.  Kramont

Employer responded that the amount had yet to be determined.

    42.    Whereas the requests of other white employees for raises were regularly afforded

"Committee Review," Plaintiff's request, which was actually a reminder of a raise already

promised, was not afforded such procedure.

    43.    Kramont Employer Ahle exercised his authority to oppose and thwart Plaintiff's

promised raise as part of his aforementioned plan.

    44.    Although Kramont Employer failed to communicate to Plaintiff a real mechanism

for submitting such employment issues to be addressed, Plaintiff made Kramont Employer aware

of the aforementioned treatment by Defendant Ahle, including with respect to the raise request.

    45.    In response, Kramont Employer failed to adequately address or remedy the

treatment.

    46.    Rather, on January 30, 2001, Kramont Employer discharged Plaintiff.

47.    At that time, Kramont Employer, through Defendant Ed Kochman, claimed that the reason for the discharge was Plaintiff's misuse of company e-mail. Specifically, Defendant Kochman claimed that Plaintiff had sent and/or received personal e-mails and that such was a basis for discharge. Defendant Kochman was the Senior Vice President, Administration, and such position carried with it the authority to discharge employees, including Plaintiff.

48.    Prior to the January 30, 2001, Kramont Employer had never communicated to Plaintiff or otherwise made her aware of any e-mail policy that it had in place. Prior to January 30, 2001, Kramont Employer never addressed the issue of Plaintiff's alleged use of personal e-mail with her. She was never given a warning or otherwise subjected to intermediate discipline for such before her discharge.

49.    Such stated reason for discharge was a pretext for Kramont Employer's real reason, which was discrimination based upon sex and race as prohibited by Title VII of the Civil Rights Act of 1964 and amendments.

50.    Beginning in or near the time of the merger and continuing until Plaintiff's discharge in January, 2001, Kramont Employer, acting by and through its servants, workmen, agents and employees engaged in a systematic pattern of discrimination which established a settle intent to deprive plaintiff of certain employment opportunities due to her race and sex.

51.    Beginning at or near the time of the merger and continuing until Plaintiff's termination in January, 2001, Kramont Employer, acting through its servants, workmen, agents and employees engaged in a systematic pattern of conduct which subjected plaintiff to a hostile and offensive work environment.

52.    At and during the course of the Plaintiff's employment, MCVRT and Kramont Employer failed to post required notices or have any policy or procedure concerning sexual harassment and discrimination based on race or sex at the worksite.

53.    At and during the course of Plaintiff's employment, MCVRT and Kramont Employer failed to communicate a clear and effective anti-discrimination policy.

54.    MCVRT and Kramont Employer further failed to communicate to plaintiff any internal complaint mechanism to address employment issues in general that provided one or more channels of complaint submission alternative to submitting same to an employee's direct supervisor where the supervisor is the source of the employment issue.

55.    Defendant Ahle's aforementioned discriminatory treatment of Plaintiff was clear to other supervisors and employees.  Moreover, Plaintiff communicated such treatment to other employees and supervisors.

56.    Despite being aware of the complaints raised by Plaintiff concerning Ahle, Kramont Employer failed and refused to take any steps to stop said action.

57.    Kramont Employer's failure to investigate or to take any steps to stop the harassment or to prevent the hostile working conditions effectively ratified, sanctioned, and condoned the discriminatory acts committed by Ahle.

58.    Despite actual and constructive knowledge, Kramont Employer failed to take prompt and effective remedial action to stop the discriminatory, harassing and offensive conduct.

59.    The above-described workplace conduct of Ahle, including his hand in the withdrawal of the promise for Plaintiff's raise, had the purpose and effect of being discriminatory, offensive, intimidating and unwelcome to Plaintiff and constituted a hostile and abusive work environment and was discriminatory and interfered with his ability to do his job.

60.    Kramont Employer, by and through the action of its employee, agent, workmen or servant, Defendant Ahle, created a work environment extremely detrimental to Plaintiff's emotional and physical health, interfered with plaintiff's work performance and caused Plaintiff acute emotional distress.

## COUNT I - TERMS AND CONDITIONS AND PRIVILEGES
## VIOLATION OF TITLE VII OF THE CIVIL RIGHTS
## ACT OF 1964 AND 1991 – CORPORATE DEFENDANTS

61.    Plaintiff incorporates by reference paragraphs 1 through 60 as if same were fully set forth herein.

62.    The actions of MCVRT and Kramont Employer through its servants, workmen, agents and employees in subjecting the plaintiff to discrimination with regards to the terms, conditions and privileges of her employment because of her race and sex as aforesaid constitute a violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended Title 42 §2000e et seq.

63.    The actions of MCVRT and Kramont Employer through its servants, workmen, agents and employees in subjecting the plaintiff to harassment based upon a hostile work environment with regards to the terms, conditions and privileges of her employment as aforesaid constitutes a violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended Title 42 §2000e et seq.

64.    MCVRT and Kramont Employers' acts of discrimination and harassment as aforesaid were intentional, willful and in reckless disregard of plaintiff's rights and interest.

65.    As a direct result of MCVRT and Kramont Employer's willful and unlawful actions in violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended Title 42 U.S.C. §2000e et seq. the plaintiff suffered emotional distress, humiliation, embarrassment, loss of self-esteem and has sustained a loss of earnings plus the value of the aforementioned benefits, plus loss future earning power, plus loss of back pay and front pay and interest due thereon.

WHEREFORE, the Plaintiff seeks the following from the Corporate Defendants:

(a) that the Court and jury enter a declaratory judgment and find
    that the Corporate Defendants violated Plaintiff's rights to be

free from race and sex discrimination and sexual harassment
under the Federal Civil Rights Acts of 1964 and 1991;

(b) that the Court and jury enter a verdict for Plaintiff and find that
Corporate Defendants have discriminated against the Plaintiff
in violation of the Federal Civil Rights Acts;

(c) that the Court award Plaintiff such back pay, front pay,
overtime and lost fringe benefits of employment;

(d) that the Court award Plaintiff such compensatory damages
allowable at law;

(e) that the Court award such declaratory, actual and nominal
damages as are allowed at law;

(f) that the Court award such attorney fees, costs and expenses,
pre- and post- judgment interest and delay damages as are
allowed by law;

(g) that the Court award equitable relief, including but not limited
to front pay, reinstatement, reformation of Plaintiff's
employment records, and letters of good reference; and

(h) that the Court award injunctive relief.

## COUNT II – TERMS AND CONDITIONS AND PRIVILEGES - VIOLATIONS OF THE PENNSYLVANIA HUMAN RELATIONS ACT – CORPORATE DEFENDANTS

66.    Plaintiff incorporates by reference paragraphs 1 through 65 as if fully set forth

herein.

67.    The actions of the Corporate Defendants through its servants, workmen, agents

and employees in subjecting plaintiff to discrimination with regards to the terms, conditions and

privileges of her employment because of her race and sex, as aforesaid constituted a violation of

the Pennsylvania Human Relations Act, Title 43 P.S. §951 et seq.

68.    The actions of the Corporate Defendants through its servants, workmen, agents

and employees in subjecting plaintiff to harassment based upon hostile work environment with

regards to the terms, conditions and privileges of her employment, as aforesaid constituted a

violation of the Pennsylvania Human Relations Act, Title 43 P.S. §951 et seq.

69.   The Corporate Defendants' acts of discrimination and harassment as aforesaid

were intentional, willful and in reckless disregard of plaintiff's rights and interest.

70.   As a direct result of the Corporate Defendants' willful and unlawful actions in

violation of Title VII of the Civil Rights Act of 1964 and 1991, as amended Title 42 U.S.C.

§2000e et seq. the plaintiff suffered emotional distress, humiliation, embarrassment, loss of self-

esteem and has sustained a loss of earnings plus the value of the aforementioned benefits, plus

loss future earning power, plus loss of back pay and front pay and interest due thereon.

WHEREFORE, the Plaintiff seeks the following from the Corporate Defendants:

(a)   that the Court and jury enter a declaratory judgment and
      find that the Corporate Defendants violated Plaintiff's
      rights to be free from race and sex discrimination and
      sexual harassment under the Federal Civil Rights Acts of
      1964 and 1991;

(b)   that the Court and jury enter a verdict for Plaintiff and find
      that Corporate Defendants have discriminated against the
      Plaintiff in violation of the Federal Civil Rights Acts;

(c)   that the Court award Plaintiff such back pay, front pay,
      overtime and lost fringe benefits of employment;

(d)   that the Court award Plaintiff such compensatory damages
      allowable at law;

(e)   that the Court award such declaratory, actual and nominal
      damages as are allowed at law;

(f)   that the Court award such attorney fees, costs and expenses,
      pre- and post- judgment interest and delay damages as are
      allowed by law;

(g)   that the Court award equitable relief, including but not
      limited to front pay, reinstatement, reformation of
      Plaintiff's employment records, and letters of good
      reference; and

(h)     that the Court award injunctive relief.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER PENNSYLVANIA LAW – ALL DEFENDANTS

71.     Plaintiff incorporates by reference paragraphs 1 through 70 as if fully set forth herein.

72.     Plaintiff attempted to exercise her right pursuant to Title VII by informing her employer of the aforementioned adverse treatment by Defendant Ahle and of the raise that she was promised and to which she was entitled but never received.

73.     The Defendants responded by intensifying the adverse treatment and, then, discharging her.

74.     Plaintiff believes and therefore avers that the Corporate Defendants' actions, in the case of the Corporate Defendants through their servants, agents and employees in intensifying the adverse treatment and terminating her employment was directly related to the Plaintiff's attempt to exercise her rights pursuant to Title VII and the PHRA.

75.     As a direct result of such retaliation Plaintiff has suffered a loss of wages, salary, employment benefits and other compensation associated with her employment.

WHEREFORE, the Plaintiff seeks the following from the Corporate Defendants:

(a) that the Court and jury enter a declaratory judgment and find that the Corporate Defendants violated Plaintiff's rights to be free from race and sex discrimination and sexual harassment under the Federal Civil Rights Acts of 1964 and 1991;

(b) that the Court and jury enter a verdict for Plaintiff and find that Corporate Defendants have discriminated against the Plaintiff in violation of the Federal Civil Rights Acts;

(c) that the Court award Plaintiff such back pay, front pay, overtime and lost fringe benefits of employment;

(d) that the Court award Plaintiff such compensatory damages allowable at law;

(e) that the Court award such declaratory, actual and nominal
    damages as are allowed at law;

(f) that the Court award such attorney fees, costs and expenses,
    pre- and post- judgment interest and delay damages as are
    allowed by law;

(g) that the Court award equitable relief, including but not limited
    to front pay, reinstatement, reformation of Plaintiff's
    employment records, and letters of good reference; and

(h) that the Court award injunctive relief.

## COUNT III – INTENTIONAL INFLICTION OF EMOTIONAL DISTRESS UNDER PENNSYLVANIA LAW – ALL DEFENDANTS

76.    Plaintiff incorporates by reference paragraphs 1 through 75 as if fully set forth herein.

77.    Defendants, through their aforementioned conduct, which was extreme and outrageous, intentionally or recklessly caused severe emotional distress to Plaintiff, resulting in bodily harm, humiliation, embarrassment, loss of self-esteem and has sustained a loss of earnings plus the value of the aforementioned benefits, plus loss future earning power, plus loss of back pay and front pay and interest due thereon.

WHEREFORE, Plaintiff demands judgment against Defendants and all actual, consequential, pain and suffering, and punitive damages.

## COUNT IV – AIDING AND ABETTING EMPLOYMENT DISCRIMINATION – DEFENDANT AHLE

78.    Plaintiff incorporates by reference paragraphs 1 through 77 as if fully set forth herein.

79.    At all relevant times, Defendant John Ahle, employed by the Corporate Defendants as Plaintiff's supervisor, aided and abetted the aforementioned discrimination, harassment and retaliation against Plaintiff by perpetuating a hostile work environment toward Plaintiff and causing her discharge in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A. §955(e).  As her immediate supervisor, he perpetuated much of the unlawful harassment and discrimination; he took no steps to stop or remedy it and retaliated against her complaints and her raising the "raise" issue by becoming more hostile and ultimately contributing to the decision to discharge her.

WHEREFORE, Plaintiff demands judgment against Defendant Ahle and damages as follows:

(a) that the Court and jury enter a declaratory judgment and find that Defendant Ahle violated Plaintiff's rights to be free from race and sex discrimination and sexual harassment under the Federal Civil Rights Acts of 1964 and 1991;

(b) that the Court and jury enter a verdict for Plaintiff and find that Defendant Ahle has discriminated against the Plaintiff in violation of the Federal Civil Rights Acts;

(c) that the Court award Plaintiff such back pay, front pay, overtime and lost fringe benefits of employment;

(d) that the Court award Plaintiff such compensatory damages allowable at law;

(e) that the Court award such declaratory, actual and nominal damages as are allowed at law;

(f) that the Court award such attorney fees, costs and expenses, pre- and post- judgment interest and delay damages as are allowed by law;

(g) that the Court award equitable relief, including but not limited to front pay, reinstatement, reformation of Plaintiff's employment records, and letters of good reference; and

(h) that the Court award injunctive relief.

## COUNT IV – AIDING AND ABETTING EMPLOYMENT
## DISCRIMINATION – DEFENDANT KOCHMAN

80.    Plaintiff incorporated by reference paragraphs 1 through 79 as if fully set forth

herein.

81.    At all relevant times, Defendant Ed Kochman, employed by the Corporate

Defendants as the person with authority over plaintiff and Defendant Ahle, including authority to

discharge plaintiff, aided and abetted the aforementioned discrimination, harassment and

retaliation against Plaintiff by perpetuating a hostile work environment toward Plaintiff and

causing her discharge in violation of the Pennsylvania Human Relations Act, 43 Pa.C.S.A.

§955(e). Defendant Kochman took no steps to stop or remedy the discrimination, harassment

and retaliation, and retaliated against her complaints and her raising the "raise" issue by

ultimately making the decision to discharge her. Specifically, he participated in the creation and

implementation of a pretextual reason for her discharge – transmission of personal e-mail – to

cover up the real reason, which was based on gender/sex and racial discrimination.

    (a) that the Court and jury enter a declaratory judgment and find
        that Defendant Kochman violated Plaintiff's rights to be free
        from race and sex discrimination and sexual harassment under
        the Federal Civil Rights Acts of 1964 and 1991;

    (b) that the Court and jury enter a verdict for Plaintiff and find that
        Defendant Kochman has discriminated against the Plaintiff in
        violation of the Federal Civil Rights Acts;

    (c) that the Court award Plaintiff such back pay, front pay,
        overtime and lost fringe benefits of employment;

    (d) that the Court award Plaintiff such compensatory damages
        allowable at law;

    (e) that the Court award such declaratory, actual and nominal
        damages as are allowed at law;

(f) that the Court award such attorney fees, costs and expenses, pre- and post- judgment interest and delay damages as are allowed by law;

(g) that the Court award equitable relief, including but not limited to front pay, reinstatement, reformation of Plaintiff's employment records, and letters of good reference; and

(h) that the Court award injunctive relief.

**KELLEY & MURPHY**
**Attorneys-At-Law**

By: _____
PATRICK G. MURPHY, ESQUIRE
KELLEY & MURPHY
Attorney I.D. No. 34815
Union Meeting Corporate Center V
Suite 160, 925 Harvest Drive
Blue Bell, PA 19422
(215) 643-6500
Attorney for Plaintiff, Wanda Fleming

By: _____
JOSEPH T. KELLEY, III, ESQUIRE
KELLEY & MURPHY
Attorney I.D. No. 78583
Union Meeting Corporate Center V
Suite 160, 925 Harvest Drive
Blue Bell, PA 19422
(215) 643-6500
Attorney for Plaintiff, Wanda Fleming

EEOC Form 161 (10/96)

## U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

## DISMISSAL AND NOTICE OF RIGHTS

To: Wanda M. Fleming
    11215 Oak Leaf Drive
    Apartment 1704
    Silver Spring, MD 20901

From: Equal Employment Opportunity Commission
      Philadelphia District Office
      The Bourse
      21 S. Fifth Street, Suite 400
      Philadelphia, PA  19106-2515

[ ]        *On behalf of person(s) aggrieved whose identity is*
           *CONFIDENTIAL (29 CFR § 1601.7(a))*

| Charge No. | EEOC Representative | Telephone No. |
|---|---|---|
| 170A11346 | Pinkey M. Lucas, Investigator | (215) 440-2652 |

THE EEOC IS CLOSING ITS FILE ON THIS CHARGE FOR THE FOLLOWING REASON:

[  ]    The facts alleged in the charge fail to state a claim under any of the statutes enforced by the EEOC.

[  ]    Your allegations did not involve a disability that is covered by the Americans with Disabilities Act.

[  ]    The Respondent employs less than the required number of employees or is not otherwise covered by the statues.

[  ]    We cannot investigate your charge because it was not filed within the time limit required by law.

[  ]    Having been given 30 days in which to respond, you failed to provide information, failed to appear or be available for interviews/conferences, or otherwise failed to cooperate to the extent that it was not possible to resolve your charge

[  ]    While reasonable efforts were made to locate you, we were not able to do so.

[  ]    You had 30 days to accept a reasonable settlement offer that afford full relief for the harm you alleged.

[ X ]   The EEOC issues the following determination: Based upon its investigation, the EEOC is unable to conclude that the information obtained establishes violations of the statutes. This does not certify that the respondent is in compliance with the statutes. No finding is made as to any other issues that might be construed as having been raised by this charge.
        The EEOC has adopted the findings of the state or local fair employment practices agency that investigated this charge.

[  ]    Other (briefly state) _____

## - NOTICE OF SUIT RIGHTS -
*(See the additional information attached to this form.)*

**Title VII, the Americans with Disabilities Act, and/or the Age Discrimination in Employment Act:** This will be the only notice of dismissal and of your right to sue that we will send you.  You may file a lawsuit against the respondent(s) under federal law based on this charge in federal or state court.  Your lawsuit must be filed **WITHIN 90 DAYS** from your receipt of this Notice; otherwise, your right to sue based on this charge will be lost.  (The time limit for filing suit based on a state claim may be different.)

**Equal Pay Act (EPA):**  EPA suits must be filed in federal or state court within 2 years (3 years for willful violations) of the alleged EPA underpayment.  This means that backpay due for any violations that occurred more than 2 years (3 years) before you file suit may not be collectible.

On behalf of the Commission

*Marie M. Tomasso*                         *February 4, 2002*

Marie M. Tomasso, District Director                 *(Date Mailed)*

Enclosure(s)
- Information Sheet

cc:   Joseph T. Kelley, III, Esquire
      Attorney for Charging Party

      Patricia Biswanger, Esquire
      Attorney for Respondent

## VERIFICATION

I, **WANDA FLEMING**, hereby verify that the facts contained in the foregoing

**COMPLAINT** are true and correct to the best of my knowledge, information and belief.  I

understand that statements made herein are made subject to the penalties of 18 Pa.C.S., Section

4904 relating to unsworn falsification to authorities.

*Wanda M. Fleming*
**WANDA FLEMING**

DATE: 4/30/02

# EXHIBIT "B"

This form is affected by the Privacy Act of 1974; See Privacy Act Statement before completing this form.

☐ FEPA
☒ EEOC   170A11346

___Pennsylvania Human Relations Comm.___ and EEOC
*State or local Agency, if any*

| NAME (*Indicate Mr., Ms., Mrs.*) | HOME TELEPHONE (*Include Area Code*) |
|---|---|
| Ms. Wanda M. Fleming | (301) 754-0903 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | DATE OF BIRTH |
|---|---|---|
| . 11215 Oak Leaf Drive Apt 1704, Silver Spring, MD 20901 | | 01/25/1967 |

NAMED IS THE EMPLOYER, LABOR ORGANIZATION, EMPLOYMENT AGENCY APPRENTICESHIP COMMITTEE, STATE OR LOCAL GOVERNMENT AGENCY WHO DISCRIMINATED AGAINST ME (*If more than one list below.*)

| NAME | NUMBER OF EMPLOYEES, MEMBERS | TELEPHONE (*Include Area Code*) |
|---|---|---|
| Kramont Realty Trust | Cat C (201-500) | (610) 825-7100 |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| 580 West Germantown Pike, Suite 200, Plymouth Meeting, PA 19462 | | 091 |

| NAME | TELEPHONE NUMBER (*Include Area Code*) |
|---|---|
| | |

| STREET ADDRESS | CITY, STATE AND ZIP CODE | COUNTY |
|---|---|---|
| | | |

CAUSE OF DISCRIMINATION BASED ON (*Check appropriate box(es)*)

☒ RACE ☐ COLOR ☐ SEX ☐ RELIGION ☐ NATIONAL ORIGIN
☐ RETALIATION ☐ AGE ☐ DISABILITY ☐ OTHER (*Specify*)

| DATE DISCRIMINATION TOOK PLACE | |
|---|---|
| EARLIEST | LATEST |
| 12/01/1999 | 01/30/2001 |

☐ CONTINUING ACTION

THE PARTICULARS ARE (*If additional space is needed, attach extra sheet(s)*):

I was hired with Respondent in April 1998 as a Receptionist. In or around May 2000 I was promoted to the position of Administrative Assistant in the Operations Department. My immediate supervisor was Kathy Ahearn, Office Manager (White). Subsequent to my promotion, I reported to various management officials depending on the job function assigned. Specifically Messrs. Ed Kochman, Sr. Vice President of Administration, Jeffrey Hipple, Vice President of Acquisitions and John Ahle, Jr. Vice President/Director of Operations. Mr. Ahle treated me differently than my White counterpart. When Christine Kempf, Administrative Assistant felt over-burdened with assignments, Mr. Ahle would reduce her workload and assign the duties to me. Mr. Ahle only held meetings with Ms. Kempf and provided her with the necessary information to perform her job. I was excluded from these meetings and was publicly critized by Mr. Ahle for not having the information that could assist me in performing my job duties. Whereas, Ms. Kempf was in attendance and given by Mr. Ahle first hand knowledge of all ncessary informaion. Ms. Kempf did not have to log-in her reporting time; wheres, I was required to do so. Whenever I requested overtime, Mr. Ahle denied my request. He stated that he could not justify paying me overtime for work not completed during regular office hours. Whereas, Mr. Ahle granted Ms. Kempf overtime at will. Eventhough I was promoted and had assumed additional responsibilities as an Administrative Assistant, I was denied an increase in my salary that was commensurate to the position. I only received a quarterly bonus and a

**## Text is Continued on Attached Sheet(s) ##**

| I want this charge filed with both the EEOC and the State or local Agency, if any. I will advise the agencies if I change my address or telephone number and cooperate fully with them in the processing of my charge in accordance with their procedures. | NOTARY - (*When necessary for State and Local Requirements*) |
|---|---|
| | I swear or affirm that I have read the above charge and that it is true to the best of my knowledge, information and belief. |
| I declare under penalty of perjury that the foregoing is true and correct. | SIGNATURE OF COMPLAINANT |
| *9/25/01* *Wanda M Fleming* | |
| Date       Charging Party (*Signature*) | SUBSCRIBED AND SWORN TO BEFORE ME THIS DATE (Month, day and year) |

EEOC FORM 5 (Rev. 07/99)

**RESPONDENT'S COPY**

Jun 25 14:23 2001  CP Initials *umf*  Chg # 170A11346, Attachment Page 1

-----------------------------------------------------------------------------
Equal Employment Opportunity Commission
Form 5 - Charge of Discrimination, Additional Text
-----------------------------------------------------------------------------


Christmas bonus which reflected that I was performing my duties in a
satisfactory manner.  However, on January 30, 2001, Mr.  Kochman
discharged me.

Mr. Hipple told me that I would not receive a raise until I worked in
the position one year; at which time reviews are conducted for all
employees.  Mr. Kochman stated that I was discharged because I was
writing personal e-mails.  I discovered that management only checked the
e-mails of the Black employees.

I believe that I have been discriminated against because of my race
((Black) in violation of Title VII of the Civil Rights Act of 1964, as
amended.

I further believe that Respondent has a pattern of establishing
different standards for Black employees than White employees in
violation of Title VII.  Specifically, when a similarly situated white
employee named Carey Pearson requested a raise, she was told that a
Committee would meet to determine her eligibility.  Whereas, I was
required to demonstrate my abilty for one year in order to be considered
for compensation which would automatically come with being promoted.
Lisa Johnson, Paralegal (Black) was required to show documentation
regarding her legal qualifications.  Whereas, White employees are not
held up for the same level of scrutiny or held to the same standards as
Black employees upon hire.