**IN THE UNITED STATES DISTRICT COURT**
**FOR THE EASTERN DISTRICT OF PENNSYLVANIA**

| | | |
|---|---|---|
| **WANDA FLEMING** | : | |
| **Plaintiff** | : | |
| **vs** | : | |
| | : | |
| **KRAMONT EMPLOYER ROYCE REALTY,** | | |
| **INC. d/b/a KRAMONT REALTY TRUST, et al** | : | |
| **Defendants** | : | **CIVIL ACTION NO: 02-CV-2703** |

**PLAINTIFF'S MEMORANDUM OF LAW IN SUPPORT**
**OF REPLY TO DEFENDANT'S MOTION TO DISMISS**

## I.    INTRODUCTION

The core of Plaintiff's complaint is simple. Plaintiff, Wanda Fleming, an African American female, was first employed by Defendant, Kramont Realty Trust, or one of the other corporate Defendants named in the Complaint, ("Kramont Employer") as a receptionist in April 1998. (Complaint Para. 23) In or about May, 2000, Kramont Employer promoted Ms. Fleming to the position of Administrative Assistant in the Operations Department. (Para. 26) Such promotion was linked to a merger between two of the corporate Defendants in or about June 2000 and for which Plaintiff was to act as liaison between the merging companies. (Para. 10, 28) Kramont Employer promised Ms. Fleming a raise with the promotion, the amount of which it would promptly inform her. (Para. 28) Upon the merger, Kramont Employer placed Defendant John Ahle as Ms. Fleming's supervisor. (Para. 32)

Immediately thereafter, Defendant Ahle embarked upon a settled plan the ultimate goal of which was to cause either the formal or constructive discharge of Ms. Fleming. (Para. 33) He created a hostile work environment through harassment and then ultimately caused her discharge in January of 2000. (Id.)

His treatment of Ms. Fleming included: depriving her of necessary information to perform her job, excluding her from essential meetings and other ostracism, publicly chastising and criticizing her without warrant and other harassment. (Id.)  Ms. Fleming claims that such conduct was discriminatory and based upon sex and race.  In support of Mr. Ahle's discriminatory animus, Plaintiff alleges that Defendant Ahle warned at least one co-employee not to "get to friendly with that stupid nigger" (referring to Ms. Fleming), and that Ahle was planning "to replace her with his former secretary, Christine" (referring to Christine Kempf), who Ahle described as "sexy". (Para. 34)  Defendant Ahle caused Christine Kempf, who is white, to be hired by Kramont Employer, where she worked along side of Ms. Fleming as administrative assistant in Operations. (Para. 35)  The aforementioned harassment occurred in the context of Mr. Ahle exhibiting extreme favoritism toward Ms. Kempf and applying different rules to the two employees. (Para. 35-40)

Then on January 30, 2001 Kramont Employer summarily discharged Ms. Fleming, for, as they claimed, using company e-mail for personal reasons. (Para. 47)  Kramont employer had never communicated any e-mail policy to Ms. Fleming or disciplined Ms. Fleming for violations of such policy or even addressed the personal use of e-mail with her, or any other computer use, in any way. (Para 48-49)  Plaintiff believes that this stated reason was merely a pretext for the Defendants' true reason:  illegal discrimination based upon sex and race. (Para. 49)

Defendant also claims that she attempted to raise her unfair treatment at the hands of Defendant Ahle with the Kramont Employer, which lacked an effective complaint procedure.  Instead of redressing the complaints Plaintiff was met with intensified discrimination and ultimate dismissal. (Para. 44-47)

Accordingly, in sum, Ms. Fleming raises two adverse employement actions:  the harassment/hostile work environment created by Defendant Ahle and her ultimate discharge.  She claims that the reasons for these actions were sex and race discrimination and retaliation.  She claims, therefore,

that the Defendants are liable for discrimination based upon sex and race under Title VII (Count I) and under the PHRA (Count II), retaliation (Count III), intentional infliction of emotional distress under Pennsylvania law (Count III)[1]  Plaintiff also states claims against Defendants Ahle (Count IV) and Ed Kochman (Count V) for aiding and abetting in the discrimination.

Defendants do not move to dismiss Plaintiff's claims against Kramont Employer for race discrimination under Title VII (Count I) or the PHRA (Count II) or against the individual Defendants for aiding and abetting (Counts IV and V).  Rather, Defendants move to dismiss Plaintiff's claims for intentional infliction of emotional distress, retaliation and, Counts I and II  only to the extent that they claim discrimination on the basis of sex.

Defendants' liberal use of adjectives in referring to Plaintiff's allegations as set forth in the Complaint does not diminish the fact that she states sufficient causes of action to survive a motion to dismiss.

## II.    ARGUMENT

In federal civil cases, a claimant does not generally have to set out in detail the facts upon which a claim is based, but must merely provide a statement sufficient to put the opposing party on notice of the claim. F.R.C.P. 8; Weston v. Pennsylvania, 251 F.3d 420, 428 (3d Cir. 2001);  Remick v. Manfredy, 238 F.3d 248, 264 (3d Cir.2001); Foulk v. Donjon Marine Co., 144 F.3d 252 (3d Cir.1998). In Conley v. Gibson, 355 U.S. 41, 47-48, 78 S.Ct. 99, 103, 2 L.Ed.2d 80 (1957), the Supreme Court set out the proper role of pleadings:

> The Federal Rules of Civil Procedure do not require a claimant to set out in detail the facts upon which he bases his claim. To the contrary, all the Rules require is a short and plain statement of the claim that will give the defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests. Such simplified "notice pleading" is made possible by the liberal opportunity

---

[1] The first Count III of the Complaint, for retaliation, was mislabeled "Intentional Infliction of Emotional Distress."  The second Count III, which should have been labeled "Count III-A" is the intentional infliction of emotional distress claim.  The Defendants understood the claims as they were intended, as evidenced by the fact that they move to dismiss both the retaliation and intentional infliction of emotional distress claims.  Plaintiff's counsel apologizes for the confusion.

> for discovery and the other pretrial procedures established by the Rules to disclose more
> precisely the basis of both claim and defense and to define more narrowly the disputed facts and
> issues.
> The Federal Rules reject the approach that pleading is a game of skill in which one misstep by
> counsel may be decisive to the outcome and accept the principle that the purpose of pleading is
> to facilitate a proper decision on the merits.

Id. (cited in Weston, 251 F.3d at 429 (citations omitted)). That Court held that even though allegations

of hostile environment were "not strong" they suffice to meet "lenient standards of notice pleading." 251

F.3d at 429; see also Universe Tankships, Inc. v. United States, 528 F.2d 73, 75 (3d Cir.1975) (notice

pleading requires a party only to "disclose adequate information as the basis of his claim for relief.");

Quinones v. United States, 492 F.2d 1269, 1273 (3d Cir.1974) ("[A] complaint should not be dismissed

for failure to state a claim unless it appears beyond doubt that the plaintiff can prove no set of facts in

support of his claim which would entitle him to relief"). Moreover, Discrimination and other civil rights

claims are clearly subject to notice pleading. Weston, 251 F.3d at 429.

A.      **Plaintiff Did Not Fail to Exhaust Her Administrative Remedies**

It is well settled that before bringing a suit in a federal court alleging violations of Title VII and

the PHRA, a plaintiff must exhaust her administrative remedies by first filing a charge with the

appropriate agency. Ivory v. Radio One, Inc., 2002 WL 501489 (E.D. Pa. 2002) (footnote omitted).

However, "[o]nce a discrimination charge has been filed, the scope of a judicial complaint is not limited

to the four corners of the administrative charge." Id. (quoting Duffy v. Massinari, 202 F.R.D. 437, 441

(E.D.Pa.2001)). The parameters of the civil action in the district court are defined by the scope of the

EEOC investigation which can reasonably be expected to grow out of the charge of discrimination,

including new acts which occurred during the pendency of proceedings before the Commission.

Ostapowicz v. Johnson Bronze Co., 541 F.2d 394, 398-99 (3d Cir.1976); Doe v. Kohn Nast & Graf,

P.C., 866 F.Supp. 190, 196 (E.D.Pa.1994); see also Hicks v. ABT Assoc., Inc., 572 F.2d 960 (3d

Cir.1978) (plaintiff permitted to add sex discrimination claim even though EEOC only investigated race

discrimination allegation because sex discrimination claim would have grown out of proper EEOC investigation of race claim).

The scope of the civil complaint is accordingly limited by the charge filed with the EEOC *and the investigation which can reasonably be expected to grow out of that charge*. Reddinger v. Hosp. Cent. Servs., Inc., 4 F.Supp.2d 405, 409 (E.D.Pa.1998) (citation omitted; emphasis supplied).  The determination of whether a judicial complaint is within the scope of an earlier administrative charge or a reasonable investigation therefrom "turns on whether there is a close nexus between the facts supporting each claim or whether additional charges made in the judicial complaint may fairly be considered explanations of the original charge or growing out of it." Fakete v. Aetna Inc., 152 F.Supp.2d 722, 732 (E.D.Pa.2001) (citation omitted).  Stated differently, as applied by the Ivory court, the question is the facts alleged in Ivory's administrative complaint are sufficient for this court to find that a retaliation claim is a "natural outgrowth" of the administrative charge. 2002 WL 501489 *2.

There is no dispute that neither Plaintiff nor the EEOC employee checked the boxes for "sex" or "retaliation" on the original EEOC charge.  The failure to check a particular box on an EEOC charge, such as is the case here, is not necessarily indicative of a failure to exhaust administrative remedies. See Doe, 866 F.Supp. at 196 ("'[W]e decline to hold that the failure to place a check mark in the correct box is a fatal error. In the context of Title VII, no one ... should be boxed out.'") (quoting Sanchez v. Standard Brands, Inc., 431 F.2d 455, 463 (5th Cir.1970)). However, it is clear in the instant matter that the claims for discrimination based upon sex and retaliation, as set forth in the civil complaint, could reasonably have been expected to grow out of the original charge.  The gravamen of the factual statement in the charge is that the Defendants, through harassment, created a hostile environment up until January 2000, when they ultimately fired her for a discriminatory reason.  The reason proffered by the Defendants discharge was for writing personal e-mails, which the charge states was a pretext for the

true, discriminatory reasons.  In the charge Plaintiff offers that the discriminatory reason for her discharge was race, because of the racially discriminatory pattern that her employer had established and of which she was aware at the time.  In the civil Complaint, Plaintiff claims additional prohibited motivations for that *same conduct*: sex discrimination and retaliation.  There can be no dispute that an EEOC investigation into specific allegations of harassment and discharge on the basis of race, could explore other motivations for that *same conduct*, and thus be expanded to include such motivations if they are prohibited.  This is the standard as applied by <u>Hicks</u>. 572 F.2d 960.

The law does not require Plaintiff to offer a reason for her failure to indicate "sex" as a discriminatory basis on her EEOC charge.  However, it should be noted that it was not until after the filing of the EEOC charge and before the filing of the civil Complaint that Plaintiff received specific information that Defendant Ahle had instructed at least one employee "not to get too friendly with that stupid nigger" (referring to Plaintiff) and that Ahle was planning "to replace her with his former Secretary, Christine" (referring to Christine Kempf), who Ahle described as "sexy."  (Complaint, Para. 34)  The specifics of this statement provided evidence of an additional improper motive for Defendants' harassment and discharge of Plaintiff:  sex.  Ahle's statement that he believed Ms. Kempf to be "sexy" directly implies that he did not so fancy Plaintiff, and that Plaintiff's lack of "sexiness" was an additional discriminatory motive for the *same conduct* alleged in the charge and maintained at the fact finding conference.

Moreover, several times during the investigation, including in an agency questionnaire Plaintiff disclosed to the EEOC the name of an employee/former employee (the same employee who provided the aforementioned statement in Paragraph 34), indicating that such employee could provide information to the EEOC regarding racially derogatory statement(s) by Defendant Ahle regarding Plaintiff.  The fact that the EEOC presumably never vigilantly pursued such employee/former employee, which would have

reasonably led to the disclosure of the sexual basis of the discrimination, is irrelevant.  See Ivory, 2002 WL 501489, and Hicks, 572 F.2d 960 (stating that the parameters of a judicial complaint must be determined by whether a reasonable investigation stemming from the administrative charge would have revealed claims of retaliation and that "the scope of the actual administrative investigation is irrelevant").  When the EEOC's investigation is narrowly focused or improperly conducted, the plaintiff should not be prevented from bringing a civil action. Christian v. Southeastern Pennsylvania Trans. Authority,  1997 WL 736867 *2 (E.D.Pa.,1997); Hicks, 572 F.2d at 966.

While Plaintiff concedes that the charge itself does not indicate facts that Plaintiff engaged in protected conduct under Title VII for which the Defendants retaliated against her, such does not constitute a failure to exhaust administrative remedies.  Plaintiff alleges in the complaint that she attempted to raise her harassing treatment by Mr. Ahle internally, even though there was no proper complaint procedure.  Instead of redressing these issues the Defendants intensified the harassing conduct toward Plaintiff and ultimately discharged her.  Accordingly, there was an additional prohibited motive for the same conduct (harassment and discharge) that was set forth in the charge and Complaint.  Once again, the standard is whether the allegations in the complaint can reasonably be expected to grow out of an investigation based upon the charge.  It stands to reason that a fundamental question in any investigation into any charge of discrimination would be "did the plaintiff complain to the employer about it and what, if anything, did the employer do in response?"  Such would lead, inexorably, to issues of retaliation, especially where it deals with the *same adverse employment action* as alleged in the original charge.  Moreover, Plaintiff raised the retaliation issue with the EEOC during the investigation and Defendants were well on notice of same.

In short, Plaintiff alleges in the complaint the same exact adverse employment actions (harassment and discharge) as in the EEOC charge.  Defendants in their Memorandum shortsightedly

look only to the four corners of the administrative charge, instead of considering what areas a proper

EEOC investigation would address.  The varying prohibited motivations for the same conduct could

reasonably have flowed out of an agency investigation and should not be dismissed at this early stage.

**B.    The Pennsylvania Workers' Compensation Act Does Not Preempt Plaintiff's Claim  for Intentional Infliction of Emotional Distress**

Defendants argue that the Pennsylvania Workers' Compensation Act ("WCA") precludes

Plaintiff's state law claim for intentional infliction of emotional distress ("IIED").  There is no dispute

that the WCA is the exclusive source of an employer's liability to an employee for any injury arising in

the course of his or her employment. 77 Pa.C.S.A. §  481. However, the WCA's definition of "injury

arising in the course of his employment" excludes "an injury caused by an act of a third person intended

to injure the employee because of reasons personal to him, and not directed against him as an employe

or because of his employment." 77 Pa. C.S.A. §  411 (West Supp.1995).  The Pennsylvania Superior

Court has consistently held that conduct giving rise to claims for supervisor harassment, is for "reasons

personal" to the harassing supervisor and accordingly falls under this "personal animus" exception to the

exclusivity provision under the WCA. See Brooks v. Mendoza, 2002 WL 467157 (E.D. Pa. Mar. 26,

2002) citing Hoy v. Angelone, 456 Pa.Super. 596, 691 A.2d 476, 482 (Pa.Super.Ct.1997), aff'd on other

grounds, 554 Pa. 134, 720 A.2d 745 (Pa.1998) (concluding that the WCA did not preclude a claim for

IIED on the basis that a supervisor's sexual harassment of an employee is "personal in nature and not

part of the proper employer/employee relationship.")

In Schweitzer v. Rockwell Int'l, 402 Pa.Super. 34, 586 A.2d 383, 391 (Pa.Super.Ct 1990), the

plaintiff alleged that her supervisor touched her breasts, demanded a sexual relationship, and made lewd

comments about her body.   The court found that plaintiff's alleged emotional distress "arose from

harassment personal in nature and not part of the proper employer/employee relationship" and held that

plaintiff's IIED claim against her employer was not barred. 586 A.2d at 391.  As noted in <u>Armbruster v.</u>

<u>Epstein</u>, 1996 WL 289991*6 (E.D. Pa.):

> Federal courts interpreting Pennsylvania law have followed <u>Schweitzer</u> in a number of cases.
> For example, in <u>Gruver v. Ezon Prods., Inc.</u>, 763 F.Supp. 772, 776 (M.D. Pa.1991), the court
> found that the WCA's exclusion did not apply to certain types of intentional infliction claims
> brought against employers; "[H]arassment of a sexual nature in the workplace has nothing to do
> with work, but rather stems from reasons personal to the party foisting his attentions on a co-
> worker."  <u>See also</u> <u>Price v. Philadelphia Elec. Co.</u>, 790 F.Supp. at 100 ("The court concludes that
> the WCA does not bar intentional infliction of emotional distress claims [against an employer]
> for racial harassment which fall within the ambit of the third-party exception.");  <u>Hurst v. Beck</u>,
> 771 F.Supp. 118, 120-21 (E.D.Pa.1991)(applying Schweitzer to pregnancy discrimination case).

1996 WL 289991*6 (E.D. Pa.) (footnote omitted).  The plaintiff in <u>Ambruster</u> alleged that her

supervisor proposed that the two have a sexual relationship, stated that a promotion could be arranged

for plaintiff if she "played her cards right," and attempted to kiss her among other sexually harassing

conduct. Id. at *1.  The Court denied the defendants' motion to dismiss based upon the aforementioned

authority.

The Pennsylvania Supreme Court has not ruled on the issue.  In <u>Barb v. Miles, Inc.</u>, 861 F.Supp.

356, (W.D.Pa.1994), the Court held:

> When the highest state court has not indicated it would rule otherwise, the federal courts must
> give significant, though not conclusive, weight to the state's intermediate appellate courts'
> decisions.  <u>Gulick v. Chia S. Shu, M.D., P.C.</u>, 618 F.Supp. 481 (M.D.Pa.1985).   The court is
> satisfied that the Pennsylvania Superior Court's analysis and holding in <u>Schweitzer v. Rockwell</u>
> <u>International</u>, 402 Pa.Super. 34, 586 A.2d 383 (1990), accurately reflects the correct approach to
> the issue.

861 F.Supp. at 360. <u>See also</u> <u>Armbruster</u>, 1996 WL 289991*7. Therefore, the Court properly rejected

the employer-defendant's preemption argument.

While one could argue that there is some uncertainty on this question of law, there is no

argument that the law is settled in support of Defendants preemption argument.  Accordingly, the claim

should not be dismissed at this early stage.

C.    **Plaintiff States a Claim for Intentional Infliction of Emotional Distress**.

A plaintiff must allege conduct the following four elements to state a claim for IIED: (1) the conduct must be extreme and outrageous; (2) the conduct must be intentional or reckless; (3) it must cause emotional distress; and (4) the distress must be severe. Bradshaw v. General Motors Corp., 805 F.2d 110, 114 (3d Cir.1986); Chuy v. Philadelphia Eagles Football Club, 595 F.2d 1265, 1273 (3d Cir.1979); Gilbert v. Feld, 788 F.Supp. 854, 862 (E.D.Pa.1992). Plaintiff has made such allegations, and, accordingly, her claim for IIED should not be dismissed at this early stage.

While it is acknowledge that a claim for workplace harassment does not necessarily rise to the level of an IIED claim, courts have generally held that a Plaintiff has stated a claim for IIED where she alleges both workplace harassment and retaliation.  See Hitchens v. County of Montgomery, 2002 WL 207180 (E.D.Pa.,2002) (denying motion to dismiss claim where plaintiff alleged sexual harassment in the form of unwanted sexual advances); Regan v. Township of Lower Merion, 36 F.Supp.2d 245, 251 (E.D.Pa.1999)(upholding claim where plaintiff suffered retaliation for complaining about sexual harassment including sexually offensive comments and inappropriate touching); McLaughlin v. Rose Tree Media Sch. Dist., 1 F.Supp.2d 476, 483 (E.D.Pa.1998) (upholding claim where plaintiff alleged a pattern of sexual harassment and alleged that employer retaliated against plaintiff for complaining about it).

As in the above cases, Plaintiff has alleged workplace harassment (based upon sex and race) and retaliation.[2]  The only incongruous aspect of these cases as compared to the instant matter is that there is a different species of harassment.  Whereas the above cases tend to deal with harassment in the form of

---

[2] Defendants claim in their memorandum that Plaintiff "does not complain that she was sexually harassed." (Defendants' Memorandum, p.5)  However, claims of sex and race discrimination in the form of workplace harassment are set forth in Paragraphs 62, 63, 67, 68, 79 and 81 of the Complaint.  Moreover, the fact that Defendants have moved to dismiss the retaliation and the sex discrimination claims have no bearing on this state claim.

claim that sexual advances were made upon her, Plaintiff alleges here that she was subjected to harassment in the form of a hostile workplace environment, subsequently discharged, provided with a false reason for discharge, and was referred to as a "stupid nigger."[3]  While cases for intentional IIED based upon workplace harassment tend to revolve around unwanted sexual advances, there is no basis for concluding that such advances are required for conduct to be sufficiently outrageous.  No case that the Defendants cite makes such a holding.  This is because the focus of an emotional distress claim is upon the "outrageousness" of the conduct rather than its "sexual" character

In support is Keck v. Commercial Union Ins. Co., 758 F.Supp. 1034 (M.D.Pa.1991), "if all or part of the facts that would give rise to a discrimination claim would also independently support a common law claim, the common law claim is not preempted by the PHRA and need not be adjudicated within its framework." 758 F.Supp. at 1038.  For example, "if an employer effected all the elements of intentional infliction of emotional distress upon an employee and chose to do so because the employee was black, the employer may be found liable for discrimination as well as intentional infliction of emotional distress." Id. at 1038. See also Price v. Philadelphia Elec. Co., 790 F.Supp. 97, 100 n. 8 (E.D.Pa.1992). Moreover, preventing otherwise valid tort law claims "actually frustrates the purpose of the statute [the PHRA], the prevention and remediation of discrimination." Schweitzer, 586 A.2d at 389 (intentional infliction of emotional distress claim survives along with sexual harassment claim), appeal denied, 600 A.2d 954 (Pa.1991).

In any case, the allegations suffice the liberal pleading requirements set forth in Weston, which held that claim satisfied the "extremely lenient requirements of notice pleading" although it "question(ed) the merits the plaintiff's claim Weston v. Pennsylvania, 251 F.3d at 430.

---

[3] This last comment, while not made in Plaintiff's presence, was made in the workplace to a co-employee

**D.  Defendants' Scandalous and Impertinent and False Statements Should Be Stricken**

Defendant parenthetically includes factual allegations in their Memorandum regarding Plaintiffs counsel

that, while irrelevant to the motion to dismiss, require a response.  Counsel for Defendants states that the

allegation in the Complaint that:

> Mr. Ahle used racially derogatory language when he referred to her . . . was not made until the
> fact finding conference:  when the EEOC investigator made it clear that plaintiff's story was not
> holding up, plaintiff left the room for a private conference with her attorney and returned armed
> with this new and highly inflammatory allegation.

(Defendants' Memorandum, p.10)  The implication here is clear: counsel for Defendants claims that

Plaintiff's counsel, in the middle of an EEOC fact-finding conference, broke for the purpose of

conspiring to fabricate false evidence out of thin air and present it in the Conference.  This disturbing

accusation goes beyond mere criticism of Plaintiff's Complaint or characterization of allegations therein,

by maligning and smearing the professional integrity of Plaintiff's Counsel.  Moreover, it is

unequivocally false.  As puzzling and unfortunate as this allegation is on its face, it becomes more

bizarre when considering facts that Defendants' counsel has chosen to omit.  Plaintiff had informed the

EEOC that it had information that Mr. Ahle had made one or more racially derogatory statements

regarding plaintiff long before the fact-finding Conference.  Plaintiff's counsel even informed

Defendants' counsel that this was the case during the very same Conference.  Yet instead of taking

plaintiff's counsel on his word or making any further inquiry into whether Plaintiff had actually

presented such information to the EEOC, counsel for Defendants has chosen to recklessly repeat this

accusation to the Court in their Memorandum.  Counsel for defendant never asked either the EEOC or

Plaintiff or her counsel about evidence relevant to her own accusation before repeating it to this court.

Moreover, the proposed motivation for the alleged fabrication is preposterous:  there would be no reason

for Plaintiff and her counsel to fear the decision of the EEOC which cannot adversely affect her right to

sue in federal court.

It stands clear that if Counsel for Defendant were genuinely concerned about such a conspiracy to concoct evidence, there are proper channels to have that addressed.  Instead, Counsel for Defendant has chosen to include that scandalous, impertinent, and apocryphal allegation in her memorandum for the purpose of prejudicing the Court against Plaintiff and her counsel.  The Court should strike this parenthetical statement from the Memorandum.

Additionally, Plaintiff disputes the statement that allegations of retaliation "did not surface until the Complaint was filed."  Plaintiff informed EEOC investigator of allegations of retaliation.  Plaintiff also disputes Defendants' false categorization of the EEOC's finding in the matter. Specifically it is stated that the EEOC "found no basis in fact for plaintiff's charges." (Id. p.1)  The EEOC determination is set forth in its "Dismissal and Notice of Rights," which is an Exhibit to the Complaint.  That determination speaks for itself and Defendants misstate it.

## III.    CONCLUSION

Defendants Motion to Dismiss is without merit and should be denied.

Respectfully submitted,

_____
**JOSEPH T. KELLEY, III, ESQUIRE**
ATTORNEY I.D. NO:  78583
**925 HARVEST DRIVE, SUITE 160**
**BLUE BELL, PA.   19422**
**(215)  643-6500 – Phone**
**(215)  643-8356 – Fax**

Dated: _____

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA

WANDA FLEMING                                       :

                 Plaintiff        :

     vs                                          :

                                 :

KRAMONT EMPLOYER ROYCE REALTY,
INC. d/b/a KRAMONT REALTY TRUST, et al  :

               Defendants        :        CIVIL ACTION NO: 02-CV-2703

## <u>ORDER</u>

       **AND NOW,** this          day of              , 2002, upon

consideration of  Defendant's Motion to Dismiss and the Plaintiff's Reply thereto, it is

**ORDERED** that the Motion is **DENIED**.


                                         _____
                                                          J.

# IN THE UNITED STATES DISTRICT COURT
## FOR THE EASTERN DISTRICT OF PENNSYLVANIA


WANDA FLEMING                            :

                **Plaintiff**          :

      **vs**                               :

                                   :

KRAMONT EMPLOYER ROYCE REALTY,
INC. d/b/a KRAMONT REALTY TRUST, et al  :

             **Defendants**        :          CIVIL ACTION NO: 02-CV-2703

## PLAINTIFF'S REPLY TO DEFENDANTS' MOTION TO DISMISS

       Plaintiff, WANDA FLEMING, by her undersigned counsel hereby replys to

Defendants' Motion to Dismiss and Memorandum of Law in Support thereof.

       Such Motion should be denied.  In support of the present reply Plaintiff

incorporates by reference the Memorandum of Law attached hereto.


                             _____
                              **JOSEPH T. KELLEY, III, ESQUIRE**
                              ATTORNEY I.D. NO:  78583
                              **925 HARVEST DRIVE, SUITE 160**
                              **BLUE BELL, PA.   19422**
                              **(215)  643-6500 – Phone**
                              **(215)  643-8356 – Fax**


Dated: _____

## <u>CERTIFICATE OF SERVICE</u>

I, JOSEPH T. KELLEY, III, ESQUIRE, hereby certify that on the 31st day of

July, 2002, I caused a true and correct copy of **PLAINTIFF'S MEMORANDUM OF LAW IN**

**SUPPORT OF REPLY TO DEFENDANT'S MOTION TO DISMISS** to be served upon the

counsel listed below, by overnight delivery:

> Patricia Sons Biswanger, Esquire
> Cozen & O'Connor
> 1900 Market Street
> Philadelphia, PA   19103

_____

**JOSEPH T. KELLEY, III, ESQUIRE**

**DATE:** _____

17